## MARY LEACH *et al. versus* JAMES LEACH.

The power of rectifying written contracts on parol proof, has not been conferred o this Court.

By articles of copartnership between T. and J., T. was to furnish as stock the sum of 20,000 dollars and J. was to manage the business and with the proceeds of sales to keep up the stock at its original value, and the profits were to be divided equally between them ; and at the termination of the partnership J. was to deliver up to T. the stock then remaining to the value of 20,000 dollars, losses by bad debts, decay of goods, and inevitable accidents excepted. It was *held*, that such losses should be regarded as diminishing the profits, and were not to be deducted from the capital stock so long as there was a surplus of property above 20,000 dollars.

*Held* also, that under these articles, the representatives of T. were not entitled, at the termination of the copartnership, to require J. to sell the capital stock and pay over to them 20,000 dollars in money, but that J. had a right to deliver to them the stock specifically.

Under the same articles, it being stipulated that T. should furnish as stock the sum of 20,000 dollars, and that the stock in trade in his store should be taken as a part of that sum at a just appraisement, and that at the termination of the partnership J. should deliver up to T. the stock then remaining, to the value of 20,000 dollars, and J. having in fact taken T's stock in trade, at cost, without an appraisement, it was *held*, that he must nevertheless, at the termination of the copartnership, deliver up stock, not of the cost, but of the value, of 20,000 dollars.

The facts, that T. appointed J. the executor of his will, and in bequeathing the partnership stock in trade to his widow and children, directed that the widow should receive her portion of the goods at the cost, were *held* not to affect the liability of J., under the articles of copartnership, to deliver up stock to the value of 20,000 dollars.

If one partner take a new lease, in his own name, of the store in which the partnership business is transacted, for a term of years extending beyond the term of the copartnership, he must account to his copartner for the profits, if any, arising from this new lease.

THIS was a bill in equity brought by the widow and children of Thomas Leach, against James Leach, his brother.

The bill alleges, that on or about the 29th of December, 1827, Thomas and James executed an indenture of copartnership, which is made a part of the bill.

By this indenture it is, among other things, agreed, that Thomas and James shall and do become copartners under the firm of Thomas & James Leach, in the trade of importing, buying, vending and retailing English and domestic dry goods ; that the copartnership shall continue five years from the 1st of February, 1828, unless sooner determined by mutual consent or the death of James, but the death of Thomas shall not determine the copartnership, " nor shall any part of the stock in trade or other property of the firm be withdrawn on that event, but the same shall continue to be used and employed by the said James, as is provided hereinafter, for the benefit and at the risk of those who shall be entitled to the same ; " that Thomas " shall furnish and deliver in as stock the sum of $ 20,000," and " that the stock in trade of the said Thomas now in his store, &c. shall be taken towards and as a part of said sum, at a just appraisement thereof by impartial men to be hereafter appointed by the parties ; " that " James shall manage the said business and stock in trade as to him shall seem meet, with the advice of Thomas, upon the trust nevertheless, that he shall, out of the proceeds of sales of the said stock, keep up and continue the said stock at its quality and value as the same shall be received by him, and shall by and out of the profits which shall be received from the said trade, pay all rents and taxes which shall be payable on account of said firm and trade, and shall defray all the usual and necessary expenses of the said trade, and shall pay to the said Thomas one full and just half part of all the residue of the profits of the said trade, and shall retain for his own use and benefit the remainder of all said profits as and for a full and entire recompense for his care, trouble and labor in the management of the said trade ; " that James " shall not, during said term, in any manner trade or deal in his own name or for his private account, but only in the name of the said firm and for the trusts aforesaid ; " and that at the termination of the copartnership, James shall " take a full and just account in writing, of the said stock then remaining in the said trade and of the expenses

Leach
v.
Leach.

and profits thereof, and deliver the same to the said Thomas," and shall " deliver up to Thomas, his executors, administrators or assigns, for his or their use or benefit, all the stock then remaining, to the value of twenty thousand dollars, losses by bad debts, decay of goods, and inevitable accidents excepted."

The bill further states, that on or about the same 29th of December, 1827, Thomas made his will, in which, after giving to his wife certain real and personal estate, he declares it to be his intention to give her a full third part in value, of his whole estate, and " to make up the said third part in value," he gives to his wife so much of his stock in trade as shall, in addition to the above expressed devise and bequest, be sufficient for that purpose ; and he says, " it is my will that the said stock shall be estimated at the cost thereof, and that no part nor interest in my said stock in trade hereby given to my said dear wife shall be withdrawn by her before the termination of my agreement of partnership with my brother James Leach, but that the same shall be suffered to remain and be employed, as by said agreement is provided, for the benefit and at the risk of my said dear wife ; " he gives his brother James the residue and remainder of all his estate, real and personal, in trust for the testator's six children, " that is to say, I direct my said trustee to sell, invest and manage the said residue and remainder as shall in his discretion seem most advantageous." " I direct my said trustee to pay or transfer to my daughter Mary Ann one full sixth part of the said residue at her age of twenty-one years or upon the day of her marriage, whichever shall first happen ; " and the testator appoints his widow and James his executors.

The bill further alleges, that about the last day of January, 1828, Thomas Leach died ; that James continued until the 1st of February, 1833, to carry on the business at the store in Court street ; that it was then the duty of James to sell and dispose of the goods and other stock then remaining, in such manner as should be most advantageous for all persons interested therein, and settle the partnership concerns, and distribute the proceeds of the stock, and the profits of the business, among the parties respectively entitled thereto ; but the bill charges, that he refuses so to do, and that he insists upon dis-

tributing the goods remaining in the store, to the amount of $ 20,000, est'mated at their cost but not salable for that sum, specifically among the plaintiffs, as and for a return of the capital advanced by Thomas Leach ; and that having obtained, during the copartnership, a new lease of the store for a term of years extending beyond the term of the copartnership, in his own name, he is carrying on the business for his own sole account, availing himself of the good will of the store for his private benefit. And whereas the defendant pretends that he is not responsible for any proportion of bad debts and other losses, which have arisen in the course of the business, but that the same are wholly to be taken out of that portion of the capital and profits which belong to the plaintiffs, the plaintiffs charge that the defendant is not at liberty to throw upon them any of the losses, but that he is bound to bear his proportion thereof by charging them against the profits of the firm or otherwise. And the plaintiffs further charge, that if the true construction of the indenture, in respect to the bad debts and the specific division of the goods, be not as they have alleged, then it was erroneously drafted and by mistake of the scrivener, and was executed by the parties under a mutual misapprehension.

The bill prays that the defendant be required to answer and to render an account, and for the appointment of a receiver, and for further relief.

The defendant, in his answer, alleges that Thomas Leach, by his will, directed that the stock to be employed in trade, should be estimated at the cost, and in consequence of this and of the frequent declarations of Thomas to the same effect, the stock in the store of Thomas at the time when the copartnership commenced, amounting to about $ 15,000, was not appraised ; that he has a right and is under obligation to distribute specifically among the widow of Thomas and such of his children as may have come of age, their proportions of the goods of the firm, to wit, to the amount of $ 20,000, valuing the same at cost, remaining unsold at the expiration of the copartnership ; that the partnership goods in the store amount to about $ 24,000 ; that as to the lease of the store, which the complainants allege he has procured for his own use, for a

Leach
*v.*
Leach.

term of five years from the expiration of the former term, he is advised that he had a good right so to do ; that he has occupied the store for about three years last past, under this lease ; that the probability that he would succeed to the good will of the store, was held out to him as an inducement to enter into the copartnership ; and that it was always understood by him, and, as he believes, by Thomas, that he was not to bear any part of the losses that might arise from bad debts or otherwise, and that he was to surrender a stock at the expiration of the copartnership equal in amount and quality to that received at the commencement, bad debts, decay of goods and unavoidable accidents excepted ; and that the articles of copartnership were not erroneously drawn.

The plaintiffs filed a general replication.

*March 30th.*

*F. Dexter* and *W. H. Gardiner*, for the plaintiffs, cited to the point, that the defendant was bound to sell the merchandise and pay off the capital in money, *Sigourney* v. *Munn*, 7 Connect. R. 11 ; *Featherstonhaugh* v. *Fenwick*, 17 Ves. 309 ; *Cook* v. *Collingridge*, 1 Jacob, 607 ; that he must account for the profits of the new lease, *Featherstonhaugh* v. *Fenwick*, 17 Ves. 309 ; *Alder* v. *Fouracre*, 3 Swanst. 489.

*Sohier* and *B. Sumner*, for the defendant.

*April 5th.*

WILDE J. delivered the opinion of the Court.

Among other stipulations in the indenture between Thomas and James Leach, it was agreed, that at the expiration of the partnership James should take a full and just account in writing of the stock then remaining in the trade, and of the expenses and profits thereof, and should then deliver up to Thomas, his executors, administrators or assigns, for his or their use and benefit, all the stock then remaining, to the value of twenty thousand dollars, losses by bad debts, decay of goods, and inevitable accidents excepted.

On this stipulation several questions have been raised, and at a former hearing the plaintiffs offered evidence explanatory of the true meaning of the parties, and to show that the written agreement was erroneously drafted by mistake of the attorney who drew the same, if its true construction be such as is contended for by the defendant's counsel. This evidence was deemed inadmissible and was rejected. It has been argued by

the plaintiffs' counsel, that it ought to have been admitted, on the ground that a party is entitled in a court of equity, to relief on account of an omission or plain mistake in a contract in writing, and that upon clear and satisfactory proof the court will rectify or reform the contract.

The power of a court of equity to reform or rectify contracts, however important and useful it may be in the administration of justice, is clearly not within the limited jurisdiction of this Court. The question was very ably argued, and fully considered, in the case of *Dwight* v. *Pomeroy & al.* 17 Mass. R. 303, which is a decisive authority against the admission of parol evidence in the present case.

The plaintiffs' counsel have attempted to distinguish the two cases, but we can perceive no distinction as to the rules of evidence, and the right of the Court to interfere by rectifying a written contract. It has been said that the Court has unlimited chancery jurisdiction in regard to all disputes between co-partners. This is true, but so also had the Court unlimited chancery jurisdiction as to all trusts arising under deeds, which was the subject matter of dispute in *Dwight* v. *Pomeroy & al.* The power of rectifying written contracts on parol proof, belongs to a distinct head of chancery jurisdiction, which the legislature has not confided to this Court. So far, therefore, as the matters in dispute between the parties relate to the terms of the partnership, they must be decided according to the construction to be given to the written agreement.

The first question in this respect is, upon which of the parties the losses by bad debts are to fall ; whether they are to be deducted from the profits, or the capital stock belonging to the plaintiffs. The defendant's counsel contend that the agreement is express, that "all losses by bad debts, decay of goods, and inevitable accidents" are to be deducted from the capital stock of $ 20,000. This is undoubtedly the literal construcion of one of the articles of partnership ; but in order to ascertain the intention of the parties, the whole agreement must be taken into consideration, and such a construction must be adopted, if it may be, as will render the various parts consistent with each other. Now, by another of the articles of partnership it was agreed, that all rents, taxes and expenses should

be paid out of the profits of the trade ; that the defendant should keep up, and continue the stock at its quality and value as the same was received by him ; and should pay to the testator one full and just half part of all the residue of the profits of the said trade, after deducting expenses, &c. and should retain for his own use and benefit the remainder of all said profits, as and for a full and entire recompense for his care, trouble and labor in the management of the said trade.  By this article of the agreement the plaintiffs are clearly entitled to one half of the profits in addition to the capital stock, which was to be kept up to its original value.  Both parties were to share the profits equally, and no profits were to be shared by either party unless the capital stock could be kept up to its original value with a surplus remaining ; for unless there was a surplus, there could be no profits.

Now it is clear, that this stipulation is altogether inconsistent with the defendant's construction of the other stipulation in regard to bad debts.  For if the plaintiffs are to bear the whole loss of the bad debts, the profits will not be equally divided.  The profits and the surplus over $ 20,000 are identical, and in this surplus the parties are to share equally.  If there were no surplus except the bad debts, there would be no profits.  The defendant claims one half of the nominal profits ; but if he is entitled to half of the nominal profi s, he must receive his pay in nominal debts, in the same proportion that the plaintiffs are to receive their share.  The actual profits are to be now divided equally, and if any of the debts now supposed to be bad should be available, a further division of profits may be made.  The clau e in the agreement relied on by the defendant, may be construed consistently with this construction of the other parts of the agreement ; and it ought, we think, to be so construed.  The defendant stipulated, at the determination of the partnership to deliver up to the testator, his executors, administrators or assigns, all the stock then remaining, to the value of $ 20,000, " losses by bad debts, decay of goods, and inevitable accidents excepted."  This exception would have applied if the capital stock had been reduced below $ 20,000, but as the capital stock was to be kept up to that value before any profits were to be divided, and as it has been

so kept up, and a large surplus remains, the exception as to bad debts, decay of goods, and inevitable accidents, has no application to the present rights of the parties ; for the capital stock has not been reduced.   We are of opinion, therefore, that the plaintiffs are entitled to receive the capital stock to the amount of $ 20,000, and their share of the profits ; and it remains to be considered in what manner distribution is to be made.

The plaintiffs claim to be entitled to have the whole partnership effects sold, and that a distribution of the proceeds should be made in money.   This claim would be well founded if there had been no stipulation between the parties as to the mode and manner of winding up the concern.   But the partners had an unrestricted right to stipulate, by the articles of partnership, in what manner the partnership effects should be disposed of, at the dissolution of the partnership ; and whatever course was agreed upon, it must form the basis of the settlement between the representatives of the deceased and surviving partner.   Gow, 430.

In the case of *Cook* v. *Collingridge*, 1 Jacob, 607, cited by the plaintiffs' counsel, where articles of partnership provided that upon its expiration, the stock in trade should be divided, received and taken by the partners according to their interests, it was held, that as the articles could not be carried into execution literally, the settlement should be made by a sale and division of the whole.   This decision is not opposed to the general principle, that stipulations of this kind are valid and binding, but is founded on the difficulty and impracticability, from the situation of the property, of executing the agreement of the parties in that case.   The validity of such stipulations, if the execution of them be practicable, cannot be questioned, and there is no difficulty in executing the agreement of the partners in the present case.

By the articles of partnership the defendant was bound to deliver to the testator, his executors, administrators, or assigns, at the expiration of the partnership, all the stock remaining, to the amount of $ 20,000 ; but this obligation was modified by the testator's will, under which the defendant had a right to retain the greatest part of the property in trust, to be managed

by him, according to his discretion, for the best advantage of the minor children. But he was bound to deliver over to the widow and to Mary Ann Leach their portions of the stock, at the expiration of the partnership, and the residue to hold in trust under the will. The defendant, however, contends that the plaintiffs are bound to take the goods at costs, and not on a just valuation, because the stock was originally estimated at costs, and was not appraised. But the contract is express, that the goods to be delivered over are to be of the value of $ 20,000. If the stock was received at costs, the presumption is that it was of equal value, but it would not follow that the stock remaining unsold at the end of five years would be in value equal to the costs.

The widow, by the will, is to receive her portion of the goods at costs, but this provision in the will does not affect the defendant's liability upon the contract, but directs only the apportionment between the widow and the children. The defendant is bound to set apart goods to the value of $ 20,000, to be divided between them as directed by the will, and it is immaterial to him how the apportionment between them is to be made.

One other question only remains to be considered. It is charged in the bill, and admitted by the answer, that during the continuance of the partnership the defendant took a new lease, in his own name, of the store in which the partnership business was transacted, for a term of years extending beyond the term of the copartnership, and the plaintiffs claim that the defendant shall be held to account for the profits, if any there be, arising from this new lease. This claim, we think, is well founded. The renewed lease formed a part of the partnership property at the time of the dissolution of the partnership. It was so decided, and we think on sound principles, in the case of *Featherstonhaugh* v. *Fenwick*, 17 Ves. 298. It is there said, that one partner cannot treat privately, and behind the backs of his copartners, for the lease of the premises where the joint trade is carried on, for his own individual benefit. If he does so treat, and obtains a lease in his own name, it is a trust for the partnership. If then the new lease was of any value, beyond the amount of the rent reserved, we think the defendant is bound to account therefor.

*Referred to a master.*